# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FARID M. SAYYED** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 05-1104** |
| | * | |
| **WOLPOFF & ABRAMSON, LLP** | * | |
| | * | |
| Defendant | * | |

## OPINION

## I.

Farid M. Sayyed (Sayyed) has sued the law firm of Wolpoff and Abramson LLP (W&A), alleging multiple violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et. seq.* (2000). The suit proceeds in five Counts:

Count I – Failure to state in interrogatories that they were a communication from a debt collector, in violation of 15 U.S.C. § 1692e(11).

Count II – Making false statements in interrogatories (a) with respect to the date of trial; (b) by stating that objections to the interrogatories must be under oath; and (c) by stating that responses were due in 30 days, in violation of 15 U.S.C. § 1692e(10).

Count III – Violation of the Maryland Rules of Professional Conduct by making false statements which constitute an unfair or unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f.

Count IV – Making a false statement as to the amount of debt owed, in violation of 15 U.S.C. § 1692e(2)(A).

Count V – Making a false representation as to the amount of attorneys fees owed, in violation of 15 U.S.C. § 1692e(2)(B) and 1692f(1).

Sayyed asks for actual damages, statutory damages, prejudgment interest, and attorneys fees and costs.

The Court initially granted W&A's Motion to Dismiss on the grounds that, as a law firm, W&A enjoyed full immunity with respect to statements made in in-court pleadings. On appeal, the Fourth Circuit reversed and remanded.

The matter is now before the Court on W&A's Motion for Summary Judgment and Sayyed's Cross-Motion for Partial Summary Judgment as to Liability.[1] For the reasons that follow, the Court **GRANTS** W&A's Motion and **DENIES** that of Sayyed.

## II.

The Court relates the facts of the case as found by the Fourth Circuit on appeal, supplemented by its own findings:

W&A is a law firm regularly practicing in the field of consumer debt collection. Discover Bank, the issuer of the Discover Credit Card, retained W&A to pursue an action against Sayyed for defaulted credit card debt. On March 16, 2004, on behalf of Discover Bank, W&A sued Sayyed in the District Court for Prince George's County, Maryland to collect the balance due.

Through counsel (the same counsel who now represents him in this proceeding),[2] Sayyed prayed a jury trial, and on April 13, 2004 the case was removed to the Circuit Court for Prince

---

[1] Counsel for W&A has filed a Motion to Withdraw. In the Motion, counsel represents that the law firm of Mann Bracken, LLP, the successor by merger to W&A, has ceased operations and is currently subject to a receivership in the Circuit Court for Montgomery County, Maryland. Counsel states that W&A has consented to the withdrawal and that the appointed receiver has the authority to further defend this lawsuit, if necessary. Sayyed opposes the Motion on the basis that competent counsel is necessary on both sides going forward in this complex case. Since W&A has consented to the withdrawal, the Court will GRANT the Motion to Withdraw and leave it to the appointed receiver to determine how best to proceed in the case in light of the Court's Opinion.

George's County. W&A filed no new complaint in the Circuit Court, relying on what was essentially an account stated in the District Court Complaint in the amount of $13,983.05. The date set for trial in the District Court had been June 11, 2004. When Sayyed's counsel removed the case to Circuit Court, a pre-trial conference was set for October 22, 2004. Apparently, no new trial date was set.

On April 22, 2004, with the case now in the Circuit Court, W&A served interrogatories on Sayyed's counsel. The interrogatories stated in the caption: "TRIAL DATE 06/11/04." Further, a preliminary instruction to the interrogatories stated, *inter alia*, that "(e)ach of the following interrogatories shall be answered separately and FULLY IN WRITING and UNDER OATH or the grounds of refusal to answer shall be fully stated under oath." Finally, the instructions to the interrogatories stated that "[i]f the answer to these Interrogatories is not mailed to counsel for Plaintiff [W&A] within thirty (30) days after the date on which they have been served upon you," the court might make appropriate orders, including rendering a default judgment in favor of Discover Bank.

On July 9, 2004, W&A filed a motion for summary judgment against Sayyed. In it W&A alleged there was no genuine issue of fact that Sayyed owed Discover Bank "the sum of $13,983.50, plus court costs, plus 15% attorneys' fees."

On or about July 28, 2004, in the Prince George's County Circuit Court suit, Sayyed filed a counter-claim against Discover Bank, alleging usury, defamation, and violation of the Truth-in-Lending Law. With the filing of the counter-claim, W&A withdrew its appearance as counsel for Discover Bank and substitute counsel entered their appearance.

---

[2] Counsel was and is Ernest P. Francis, Esquire.

By Agreement dated December 31, 2004, Sayyed settled his case with Discover Bank, agreeing to pay $7,000, and releasing any claims he might have against it or its agents, "not including Ronald S. Canter or Wolpoff & Abramson, LLP."

On April 22, 2005, Sayyed initiated his claim against W&A in this Court.

These further allegations are also relevant:

As to Count II, Sayyed says that in its interrogatories W&A misrepresented (1) that the trial date of his case in the Prince George's County Circuit Court was June 11, 2004, when, in fact, following removal of the case to that court, no trial date had been set;  (2) that any refusal on Sayyed's part to answer interrogatories had to be under oath when, in fact, only answers – not the refusals to answer – have to be under oath; and (3) that there were only thirty days after the interrogatories were mailed to the party answering before a court might enter orders against the party when, in fact, the Maryland Rules of Procedure give respondents thirty three to respond.

As to Count IV, Sayyed submits that he did not owe $13,983.50, because that amount included interest on amounts as to which Discover Bank had promised that the interest rate would be zero percent.

As to Count V, Sayyed denies that he entered into an agreement to pay attorneys fees to Discover Bank in any amount.

W&A raises several defenses.

As to Counts I and II, pertaining to the interrogatories, W&A contends that they were "a formal pleading made in connection with a legal action and as such exempt by reason of § 1692e(11).

As to all counts, W&A argues that, in a case such as this – where Sayyed was represented by counsel and where Sayyed himself cannot even say that he personally saw either the

interrogatories or motion for summary judgment during the state court proceedings[3] – the standard for evaluating alleged deception by a debt collector should be that of the reasonably competent attorney, not the least sophisticated consumer standard, and that, in all respects, a reasonably competent attorney would not have been misled or deceived by any technical error W&A might have committed.

Also as to all counts, W&A pleads the bona fide error defense, to the effect that any FDCPA violations were not intentional and occurred despite the law firm's procedures reasonably adapted to avoid error. Among other things, this defense, says W&A, extends to bona fide errors of law.

As to Count III, the cause of action based on the Maryland Rules of Professional Conduct, W&A submits that the Rules expressly "are not designed to be a basis for civil liability."

As to Count IV, W&A pleads good faith reliance on information furnished by its client, Discover Bank.

As to Count V, W&A says that merely praying for an award of 15% attorney's fee does not violate the FDCPA.

The Court considers W&A's Motion for Summary Judgment and Sayyed's Cross-Motion for Partial Summary Judgment as to Liability.

---

[3] *See* Deposition of Farid Sayyed, Nov. 15, 2007, pg. 41:

Q:      Can you testify under oath that you saw Plaintiff's Interrogatories Pursuant to Maryland Rule 2-421 before the federal lawsuit was filed?
A:      I can't swear to it.
Q:      Okay.
A:      I can't remember.

# III.

A further review of the procedural history of the case will sharpen the issues currently before the Court for decision.

The Court initially granted W&A's Motion to Dismiss on the grounds that W&A enjoyed absolute immunity from FDCPA for its interrogatories and summary judgment motion. The Fourth Circuit reversed, holding that the Act applies to the litigating activities of lawyers who qualify as debt collectors, including their in-court pleadings. One of the arguments that the Fourth Circuit felt "fortified" its conclusion was the existence of the "*bona fide error* defense" provision of the Act, Section 1692k(c), to this effect:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231-32 (4th Cir. 2007).

The Fourth Circuit also rejected W&A's argument that there can be no FDCPA liability where communications are sent to counsel representing a debtor rather than to the debtor directly, *id*. at 228-29. It also held that, while an attorney's reliance on the affidavit of his client may be a defense against legally cognizable claims under the FDCPA, that is not a reason to grant a motion to dismiss for failure to state a claim, *id*. at 235. The Fourth Circuit expressed no opinion as to whether interrogatories fall into § 1692e(11)'s exemption for a "formal pleading made in a legal action," *id*. at 235. n.2, or whether attorneys fees for collection that are set forth as a percentage of the principal debt (in this case 15%) may be deemed per se "reasonable" under a contractual provision allowing for recovery of "reasonable" attorneys fees. *Id.*

# IV. STANDARD OF REVIEW

A motion for summary judgment will be granted where there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of any material facts for trial. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). However, "a complete failure of proof concerning an essential element…necessarily renders all other facts immaterial." *Christian v. Minnesota Mining and Manufacturing Co.*, 126 F. Supp 2d 951, 956 (D. Md. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Thus, on the issues which the non-moving party has the burden of proof, "it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 256, 106 S. Ct. 2505 (1986)).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment -- even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215*,* (1985). The role of the court is to "rule on each party's motion on an individual and separate basis and determine in each case whether a judgment may be entered in accordance

with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).

## V. DISCUSSION

### A.

Count I of the Complaint pertains to W&A's alleged failure in the interrogatories sent to Sayyed's attorney to state that the interrogatories were a communication from a "debt collector," as defined by 15 U.S.C. § 1692(a)(6). It is undisputed that W&A was and is a "debt collector" within the meaning of the Act.

Although W&A argues that the interrogatories are "formal pleadings" which are expressly exempt from the Act pursuant to 15 U.S.C. § 1692e(11), the Court need not address the question at this time.[4] In its initial written communication to Sayyed dated August 25, 2003, in boldface at the bottom of the letter it read "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose." Following that advice, printed on the form complaint for collection of the debt that W&A filed in the District Court for Prince George's County, W&A identified themselves as "Attorneys in the Practice of Debt Collection." Finally, in the margin of the very interrogatories challenged here, directly beneath the name of the W&A law firm, the same words, "Attorneys in the Practice of Debt Collection," appeared in bold and capital letters. Sayyed attempts to distinguish these words from the words "debt collector," in the statute, suggesting that the words "debt collection" may refer to the collection

---

[4]    When this case first came before the Court, it opined that interrogatories come within § 1693e(11)'s exemption and found this exemption was an additional reason to dismiss Sayyed's two interrogatory-related claims (Counts I and II). The Fourth Circuit held that this issue had not been briefed by the parties or fully addressed by this Court, and in any event, that this Court's holding was "secondary" to its primary holding. The Fourth Circuit, however, expressed no opinion as to the issue and remanded it for further consideration to be "thoroughly addressed [by this Court] with the aid of briefing by the parties." 485 F.3d at 235, n2.
       The parties have now briefed this issue—albeit summarily—but, as indicated in the text, it has become unnecessary to decide the question.

of debts besides "consumer debts," the focus of the FDCPA. The Court finds this distinction frivolous; Congress did not mandate that the exact words "debt collector" be included in the disclosure, did not proscribe any minimum type size requirements for the disclosure, and did not dictate the precise location in which the disclosure must be made. W&A's statement in the printed margin of its interrogatories that it was a law firm engaged "in the practice of debt collection" was clearly sufficient to comply with the requirements of § 1692e(11). Indeed, Sayyed testified at his deposition in this case that he understood the phrase to mean that W&A was attempting to collect a debt.

Summary Judgment is granted in favor of W&A and against Sayyed as to Count I of the Complaint.

**B.**

Count II of the Complaint alleges that W&A violated 15 U.S.C. § 1692e(10) using false representations and deceptive means to collect a debt in the interrogatories. He contends that W&A made three false statements: 1) that the trial date in his case was June 11, 2004, when in fact no trial had been set for that date; 2) that the instructions to the interrogatories stated that grounds for refusal to answer had to be stated under oath, when in fact they are not required to be; and 3) that the instructions to the interrogatories stated that a court might take action against him, including entering a judgment by default, if his responses were not mailed to W&A within thirty days after service, when in fact he had thirty three days to respond.

(1)

Section 1692e(10) of the FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

The Seventh Circuit's decision in *Evory, et al. v. RJM Acquisitions Funding L.L.C., et al.*, 505 F.3d 769, 774 (7th Cir. 2007), is highly significant in this regard. In a unanimous decision authored by Judge Posner, the court agreed with the Fourth Circuit that the FDCPA extends to represented consumers, particularly with respect to required notices or false claims that might be as difficult for an attorney to discern as a consumer. *Id*. at 775. But, said the court, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id*. Even the non-expert should be able to consult law and compare the requirements of the law with the contents of the communication he has received on his client's behalf. *Id*. at 774. In other words, at least as to certain communications, the standard of review differs if the representations at issue are made to a consumer's attorney, as opposed to the consumer. *Accord Dikeman v. Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996); *Davis v. R&R Professional Recovery, Inc.*, No. 07-2772, 2009 WL 400627 at *4, n. 4 (D. Md. Feb. 17, 2009).

Sayyed submits that application of the reasonably competent attorney standard is foreclosed in this Circuit by reason of *United States v. Nat. Fin. Servs. Inc.*, 98 F.3d 131 (4th Cir. 1996). That was a suit for civil penalties brought by the federal government against a debt collection firm and two individual debt collectors for sending out computer-generated dunning letters en masse, threatening legal action that was not intended to be taken, in violation of § 1692(e)(5). As far as can be discerned, all such mailings went to a large number of unrepresented individuals; none were sent to lawyers representing the individuals. In that context, the Fourth Circuit, not unreasonably, embraced "the least sophisticated consumer standard … to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat. Fin. Servs. Inc.*, 98 F.3d at 136 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.

1993).[5]  Sayyed seeks to extrapolate that standard to the setting where the allegedly false, deceptive, or misleading statement is made directly to an attorney, even where the client may never see the supposedly communication, and even where it would be patently obvious to the attorney that the statement was in no way misleading.

The Court finds such an extension unwarranted.  In the earlier phase of the present case, eleven years after it decision in the *National Financial Services* case, the Fourth Circuit did not address the applicability *vel non* of the competent attorney standard.  The Court understands the Fourth Circuit, citing *Heintz v. Jenkins*, 514 U.S. 291 (1995), to have held that communications sent to debtors' attorneys in the course of litigation are not *ipso facto* outside the scope of the FDCPA.  Although *Heintz* found potential liability with respect to a letter sent to debtor's counsel outside of court proceedings in an effort to settle the suit, the Fourth Circuit in this case extended that general principle to include communications to a debtor's attorney contained in pleadings filed in court.  That is, communications made to debtor's attorneys contained within court pleadings (as opposed to those merely made "in the course of litigation," *Heinz's* words) are not *ipso facto* be immunized.  But that is not to say that every communication to a debtor's attorney is actionable, a distinction the *Evory* court was careful to make.  This Court finds the Seventh Circuit's refinement of the Fourth Circuit's holding in *Sayyed* appropriate and adopts it here.

---

[5]        All the cases cited by the Fourth Circuit as having applied the "least sophisticated consumer" standard involved direct communications to unrepresented consumers.  None were made to attorneys representing consumers.  *See Nat. Fin. Servs. Inc.*, 98 F.3d at 135-36.  One cited case, *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) had noted: "The [FDCPA] is aimed at protecting consumers in general from abusive debt collection practices and the test is how the least sophisticated consumer – *one not having the astuteness of a 'Philadelphia lawyer'* or even the sophistication of the average, everyday, common consumer – understands the notice he or she receives." (emphasis added).

The problem with Sayyed's suggestion that the least sophisticated consumer standard applies, notwithstanding the fact that he was represented by counsel, is well-illustrated by his challenges to W&A's alleged transgressions in the present case.

Start with the allegedly "false" trial date of June 11, 2004. When the case against Sayyed was pending in the District Court for Prince George's County, that was indeed the correct trial date. It was Sayyed's own attorney (the same attorney who represents him in the present case) who removed the case from the District Court to the Circuit Court by praying a jury trial. Jury trials are not within the jurisdiction of district courts in Maryland and can only be held in the Circuit Courts. *See* Md. Code. Ann., Courts and Judicial Proceedings, §§ 1-502, 4-201. Not only would any reasonably competent member of the Maryland bar know that to be the case; it is quite likely that Sayyed's attorney prayed for a jury trial, hence for removal of the case to the Circuit Court, precisely in order to postpone the imminent June 11 trial date, a ploy that this member of the federal bench judicially notices as having been a common tactic during his days as a Maryland practitioner and Circuit Court Judge. To allow Sayyed – who apparently never saw the interrogatories until the present suit came about – to argue that he, as a least sophisticated consumer, might have been deceived or misled by the trial date misstatement when his own lawyer engineered the change of the trial date would be a true perversion of everything the FDCPA stands for.

W&A's other alleged missteps in the interrogatories, even if technically erroneous – although the Court finds in fact that they were not – would also have been immediately apparent to even the least competent member of the Maryland bar. Sayyed complains that the interrogatories "falsely state that the grounds of refusal to answer the interrogatories must be stated under oath; [whereas] in fact objections do not need to be stated under oath." It is true that

W&A's instructions to the interrogatories indicated that "[e]ach of the following Interrogatories (questions) shall be answered separately and fully in writing and under oath or the grounds of refusal to answer shall be fully stated under oath." It is also true that the first two sentences of Maryland Rule of Procedure 2-421(b) provide:

> The party to whom the interrogatories are directed shall serve a response within 30 days of service of the interrogatories or within 15 days after the date on which the party's initial pleading or motion is required, whichever is later. The response shall answer each interrogatory separately and fully in writing under oath, or shall state fully the grounds for refusal to answer any interrogatory.

To be sure, the Supreme Court recently put to rest W&A's argument that errors of law – at least errors of law with respect to the Act itself -- are not covered by the FDCPA, *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611 n.4 (2010).[6] But as to this particular claim, it cannot be said that W&A's instruction was an error of law, much less one that was false, misleading or deceptive. In the first place, there is no case law from the Maryland Courts, nor indeed any commentary that the Court is aware of, affirming that refusals to answer interrogatories do not need to be under oath. In fact, despite the language of Maryland Rule of Civil Procedure 2-421(b) that "the response shall answer each interrogatory separately and fully in writing under oath," the Court takes judicial notice of the fact that, not only in Maryland state

---

[6]    "The parties disagree about whether § 1692k(c) applies when a violation results from a debt collector's misinterpretation of the legal requirements of state law or federal law other than the FDCPA . . . . Because this case involves only an alleged misinterpretation of the requirements of the FDCPA, we need not, and do not, reach those other questions." 130 S. Ct. at 1611 n.4.

   The mistake of law in *Jerman* was that the notice accompanying the complaint filed in court stated that the debt would be assumed valid unless the debtor disputed it *in writing*. Section 1692g(a)(3) of the FDCPA requires that the notice from the debt collector to the consumer must be in writing and must contain "a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portions thereof, the debt will be assumed to be valid by the debt collector." The issue was whether the consumer has to dispute the debt in writing.

   Although authority from the lower courts was divided as to this issue, 130 S. Ct. at 1606, the Supreme Court ultimately held that the consumer's dispute did not need to be in writing.

   The Supreme Court obviously has the final word as to the meaning of the FDCPA. Errors of state law present a different problem. Where, as here, errors of state law are alleged and no Maryland Court has opined as to whether these are in fact errors, who is to judge? Presumably the federal district court must try, and the federal appeals court will review the case, but the unseen hazards to the collecting attorney would seem to be considerable.

courts but in this and every federal court this Court is aware of, parties answering interrogatories do not insert a separate oath within each and every answer to the interrogatories; in fact, they invariably place a single oath <u>at the end</u> of their answers to all the interrogatories, including interrogatories where they give reasons for their refusals to answer.  And, *mirabile dictu*, that is precisely what Sayyed did in his answers to the interrogatories that his attorney mailed to W&A in the state court proceedings.  He placed a single oath at the end of the answers, stating -- under penalties of perjury – "that the contents of the foregoing paper are true to the best of my knowledge, information, and belief."  The "foregoing paper," of course, included Sayyed's objections to the interrogatories, which is to say, his refusals to answer.  This invariable practice clearly undercuts Sayyed's implicit suggestion that a separate oath must be contained in each answer to each interrogatory, but that it may be skipped as to the refusals to answer.  Moreover, it may seriously be doubted that this thought ever occurred to anyone – lawyer or judge – before Sayyed's counsel apparently went over W&A's pleadings with his magnifying glass.  How, truly, would even the least sophisticated debtor – especially one who in all likelihood never even saw the pleading – conceivably be misled or deceived by this statement?  How, much less, would a reasonably competent attorney be misled or deceived?  The Court concludes as a matter of law that this claim cannot survive summary judgment in favor of W&A.

Then there is the matter of the third alleged deception in the interrogatories regarding the time for Sayyed to respond.  This part of W&A's instructions stated:

> If the answer to these Interrogatories is not mailed to counsel for Plaintiff within thirty (30) days after the date on which they have been served upon you, the Court may make such orders in regard to the failure to answer the said Interrogatories as the Court finds to be just, including but not limited to, the rendering of judgment be [sic] default in favor of the Plaintiff.

Sayyed says this directive was false in two respects.  Primarily, he says, the statement that the court could enter orders against him for failure to serve answers to the interrogatories if he failed to serve an answer within 30 days after service of the interrogatories was false because Sayyed actually had 33 days to serve his answers or response without being subject to any orders of the court.[7]

Again, bearing in mind that Sayyed would have to demonstrate that the trier of fact could conclude that it is more likely than not that this statement was false, misleading or deceptive, he has not done so.  Maryland Rule 2-421(b) expressly states that the party responding to the interrogatories "shall serve a response within thirty days after service of the interrogatories." Sayyed says he actually "had thirty-three days to serve his answers" because Maryland Rule 1-203(c) provides that three days shall be added to a prescribed period when "service is made by mail." That is not correct.  In fact, Sayyed's counsel could not have walked into W&A's office on the thirty-first day after Sayyed was sent the interrogatories, handed over Sayyed's answers to W&A and claimed he was making a timely filing.  Only if Sayyed or his counsel <u>mailed</u> his responses by the 30th day would he get the benefit of the additional three days for service.  As such, it was correct for W&A to say that certain consequences might follow if the answers were not "mailed" to W&A within 30 days.  Not having even seen the pleading, Sayyed would not have been misled, much less would his attorney have been.

Finally, the Court's conclusion that a competent attorney would not be confused or misled by any of the alleged misrepresentations at issue in the interrogatories is buttressed by the opinion of W&A's expert, Mark Scurti, Esquire.  Scurti, a practicing attorney for nineteen years who has previously been designated as an expert in consumer and bankruptcy issues, has

---

[7]     Sayyed also says the statement was false because it indicated that he needed to serve answers to the interrogatories to avoid a court order, whereas he also had the option to serve objections to the interrogatories.  This allegation is not set forth in the Complaint and the Court declines to address it here.

submitted an affidavit on behalf of W&A. Scurti opines that a competent lawyer would not have been misled by what Sayyed alleges are W&A's misrepresentations because a competent lawyer would not rely solely on a trial date listed in a pleading from opposing counsel to determine the court's trial schedule and would likewise be aware of Maryland's discovery rules, which of course he could consult to determine whether refusals to answer interrogatories have to be under oath or how much time is allowed for responding to interrogatories. The Court notes that Sayyed has provided no rebuttal expert testimony as to how a competent attorney might have been confused or misled by any of the alleged misrepresentations. The Court therefore accepts the conclusions of W&A's expert as confirmation of its own analysis.

For all these reasons, summary judgment is granted in favor of W&A as to Count II.

## C.

In Count III Sayyed claims that the allegedly false statements in the interrogatories violate the "Maryland Rules of Professional Conduct on making a false statement of material fact or law" and therefore operate as an unconscionable or unfair means to collect the debt in violation of 15 U.S.C. § 1692f.

The Court has already concluded above that the misrepresentations alleged by Sayyed are not actionable under the FDCPA. Alleging that the same communications violate the Maryland Rules of Professional Conduct does not alter the Court's conclusion or create a separate actionable claim under the FDCPA. The Preamble to the Maryland Rules of Professional Conduct itself specifically provides that: "Violation of a Rule does not itself give rise to a cause of action against a lawyer." Moreover, several courts have held that a debtor cannot maintain a cause of action under the FDCPA based on a claim that a debt collection attorney violated a state rule of ethical conduct. *See Heard v. Bonneville Billing and Collections*, 216 F.3d 1087 (10th

Cir. 2000); *Reade-Alverez v. Eltman and Cooper, P.C.*, 369 F. Supp. 2d 353, 361 (E.D.N.Y. 2005); *Bass v. Arrow Financial Services, L.L.C.*, No. 8595, 2002 WL 1559635 (N.D. Ill. July 16, 2001).

Summary judgment is granted in favor of W&A as to Count III.

**D.**

Count IV is Sayyed's claim that W&A violated 15 U.S.C. § 1692e(2)(A) by filing a motion for summary judgment in the State Circuit Court which falsely represented that he was indebted to Discover Card in the amount of $13,983.05. Sayyed alleges the amount sought by W&A was inaccurate because it included interest on amounts that Discover Bank had promised it would not charge any interest on. The Court has acknowledged that this type of statement by a debt collector to a debtor's attorney might well be actionable. W&A responds, however, that in its pleadings it was relying upon the information provided to it by its client and asserts the bona fide error defense provided for by the FDCPA. The Court agrees that this defense prevails.

The FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection. *See Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997) (holding that a debt collector has no obligation to conduct an independent debt validity investigation); *Elane v. Revenue Maximization Group*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (noting that defendant was entitled to rely on its client's representation that the debt was valid); *see also Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140-41 (N.D. Ill. 1998); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996). Moreover, a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c). *See Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the defendant reasonably relied on

its client's calculation of the debt owed, and that the resulting misrepresentation in a subsequent communication was a bona fide error pursuant to 15 U.S.C. § 1692k(c)).

In its oral opinion on W&A's Motion to Dismiss, the Court observed that W&A's reliance on its client as to the amount of the debt owed was another reason why W&A could not be held liable under the FDCPA. *See* Sayyed, 485 F.3d at 235. The Fourth Circuit held that it was error to consider this argument at the motion to dismiss stage but held that on remand "W&A may of course . . . avail itself of the § 1692k(c) defense" and that "W&A's reliance on its client may well be relevant to that inquiry." *Id*.

With the benefit of the briefing and affidavits submitted by the parties on summary judgment now complete, the Court concludes that the bona fide error defense does indeed bar Sayyed's claim in Count IV of the Complaint. In an affidavit, Barry E. Gordon, the W&A attorney responsible for drafting the challenged pleadings in this case, sets out the firm's procedures both for complying with court rules and for filing summary judgment motions with supporting affidavits. Gordon states that all W&A attorneys regularly review the Maryland Rules of Procedure, including all amendments thereto, to ensure that all pleadings filed by the firm are in full compliance with those rules. Additionally he explains that in every summary judgment motion filed by the firm in a debt collection action, the amount requested in the motion is verified under oath by the client in an accompanying affidavit and must supported by documentation provided by the client.

Indeed, W&A has furnished the Court with the sworn affidavit of the account manager at Discover Bank as well as the underlying account statements that W&A attached to its summary judgment motion in the state court. Sayyed does not dispute that these documents in fact accompanied the motion in state court. Rather, he says, W&A has failed to demonstrate that

W&A's procedure is one that a reasonable debt collector would follow. The Court disagrees. As noted, W&A was not required to engage in an independent investigation of the debt referred for collection. In claiming the amount of the debt owed in the motion for summary judgment in state court, W&A provided both the underlying documentation from its client, as well as a sworn affidavit from its client stating that the records were accurate. The Court finds no fault with such a procedure and holds that it was and is entirely reasonable under the circumstances. Sayyed seems to suggest that W&A had an obligation to review the entirety of his history with Discover Bank, in considerable detail, and to confirm that Discover Bank had never charged an incorrect interest rate or made any other clerical error in the maintenance of his account. It is clear that a debt collector has no such obligation under the law. *See Transworld Systems*, *Inc.*, 953 F.2d at 1032.

Summary judgment is granted in favor of W&A and against Sayyed, as to Count IV of the Complaint.

**E.**

In Count V, Sayyed claims that W&A's request for fifteen percent (15%) attorneys fees in its motion for summary judgment amounted to a false representation as to the compensation that could lawfully be received by the firm for its services, which is prohibited by 15 U.S.C. § 1692e(2)(B), and that the claim for fees represented an attempt to collect an amount not expressly authorized by the credit agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1). W&A responds that its contract with Sayyed provided for the payment of a reasonable fee, but more importantly, that its request for attorneys' fees was directed to the court, as opposed to Sayyed, and is thus not actionable under the FDCPA. Once more, W&A prevails.

Numerous courts have held that a debt collector's request for attorneys' fees directed to the court in its pleadings is not an actionable representation under the FDCPA. *See Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 808 (N.D. Cal. 2008) (holding a request for attorney fees did not violate the FDCPA since an allegation of an alternative statutory basis for an award of attorney fees that is not unlawful does not violate the FDCPA); *Cisneros v. Neuheisel Law Firm, P.C.* 444 F. Supp. 2d 946, 950 (N.D. Ind. 2006) (noting that if an agreement authorizes collection of reasonable attorney fees, a request for a specific amount is not actionable under the FDCPA); *Rael v. Davis*, No. 06-0081, 2006 WL 2346396 at *4-5 (S.D. Ind. Aug. 11, 2006) ( holding that "even though there was no contractual basis for the fee request and a fee award may have been unlikely given the limited exceptions to the American Rule regarding payment of fees . . . the mere request for attorney's fees did not violate the FDCPA").

In holding that it was "abundantly clear" that such a fee request is not actionable under the FDCPA, the court in *Argentieri v. Fisher Landscapes, Inc.* provided a succinct justification for applying such a rule:

> A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party-the court-for consideration, not a demand to the debtor himself. A request for attorney's fees ultimately rests upon the discretion of the court and a determination of applicability at a later stage of the litigation. The whole purpose of regulating debt collection was to "supervise" a range of unsupervised contacts, such as demand letters and late-night telephone calls. In contrast, a statement in a pleading is supervised by the court and monitored by counsel. The two situations are drastically different.

15 F. Supp. 2d 55, 61-62 (D. Mass. 1998).

The Court finds the holdings and rationale of these courts compelling.

Sayyed's agreement with Discover Bank provided for the recovery of "reasonable attorneys fees" in the event of a collection suit. The *ad damnum* clause in W&A's summary judgment motion before the state court read:

> WHEREFORE, your Plaintiff [Discover Bank] Prays, that summary judgment be entered in its favor in the sum of $13,983.05 plus court costs, plus 15% attorneys fees.

In the state proceeding, W&A attorney Ronald Canter attached an affidavit to the motion for summary judgment attesting that a fee of 15% was "fair and reasonable" in the matter, given, among other services, the law firm's review of the client's data, pre-suit correspondence with Sayyed, and preparation of the pleadings (complaint, summons, interrogatories, and correspondence with Sayyed's attorney). The sheer bulk of the correspondence and pleadings before the state courts – which have been submitted to this Court – confirms that a 15% fee request would have been fair and reasonable.

In any case, W&A's request to the state court for fifteen percent (15%) attorneys' fees contained in its motion for summary judgment was just that – a request directed to the court, not a communication directed to the debtor, and certainly not a misrepresentation to Sayyed's attorney, who could and in fact did easily take issue with it.

Summary judgment is granted in favor of W&A and against Sayyed as to Count V.

## VI.

For all the foregoing reasons, the Court **GRANTS** W&A's Motion for Summary

Judgment and **DENIES** Sayyed's Cross-Motion for Partial Summary Judgment as to Liability.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 20, 2010**